**Janet HARRELSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–04–005 CR, 09–04–006 CR, 09–04–007 CR, 09–04–008 CR.**

Court of Appeals of Texas, Beaumont.

Submitted on Oct. 14, 2004.

Delivered Dec. 22, 2004.

78 

James D. Evans, III, James D. Evans, III & Associates, Joseph R. Willie II, D.D.S., J.D., Willie & Associates, Houston, for appellant.

Michael R. Little, Dist. Atty., Michael A. Mark, Asst. Dist. Atty., Liberty, for state.

Before McKEITHEN, C.J., BURGESS, and GAULTNEY, JJ.

DON BURGESS, Justice.

## OPINION

A jury convicted Janet Harrelson of the following offenses: abuse of official capaci-ty (Trial Cause No. 24,514, Appeal Cause No. 09–04–005 CR); forgery (Trial Cause No. 24,515, Appeal Cause No. 09–04–006 CR); and two charges of tampering with a governmental record (Trial Cause Nos. 24,516 and 24, 518, Appeal Cause Nos. 09–04–007 CR and 09–04–008 CR). The trial court sentenced Harrelson as follows: (1) for abuse of official capacity-sixty days' confinement in the Liberty County Jail, $318 in court costs, and $880 in restitution; (2) for forgery—ten years' confinement in the Texas Department of Criminal Justice, Institutional Division, probated for ten years, a $10,000 fine, and $318 in court costs; and (3) for each charge of tamper-ing with a governmental record—two years' confinement in the Texas Depart-ment of Criminal Justice, State Jail Divi-sion, probated for five years, a $5,000 fine, and $318 in court costs. The sentences run concurrently.

Harrelson appeals raising a number of issues. Following a brief recitation of the facts, we first address Harrleson's claims the evidence is legally insufficient to sup-port her conviction for any of the offenses.

## BACKGROUND

The charges brought against Harrelson arise from a bench warrant transferring her son, Jeffrey Paul Hale, from the Stiles Unit of the Texas Department of Criminal Justice, Institutional Division, in Jefferson County, Texas, to the Liberty County Jail. The record reflects that in November of 2002, a bench warrant was sought on the grounds a necessity existed for Hale to appear as a witness in a motion for modifi-cation regarding his younger brother. The first application resulted in a bench warrant authorized by Judge Zbranek. That warrant was not executed because it was issued on Friday, with a Sunday re-turn date, and TDC requires three work-ing days' notice. It also did not include

Hale's TDC number. Sheriff Greg Arthur returned that warrant. A second application resulted in another bench warrant which purported to be, but was not, authorized by Judge Zbranek. On November 13, Odell McDuffie, Judge Don Taylor's bailiff, went to the Stiles Unit to execute the warrant. Harrelson went with him. McDuffie forgot his wallet and TDC would not release Hale to him without identification. The next day, John Davis, Judge Zbranek's bailiff, accompanied by Harrelson, executed the warrant and Hale was placed in the Liberty County Jail. The mother of one of Hale's victims, Sharon Dulany, was notified of the transfer. Following phone calls by Dulany, the story "broke" and it was discovered the second bench warrant was not authorized. Hale was transferred back to the Stiles Unit. Harrelson was removed from office and indicted.

## LEGAL SUFFICIENCY OF THE EVIDENCE

### Standard of Review

 In reviewing the legal sufficiency of the evidence to support a conviction, our task is to consider all of the record evidence and reasonable inferences therefrom in the light most favorable to the jury's finding and to determine whether, based on that evidence and those inferences, a rational jury could have found all of the essential elements of the offense beyond a reasonable doubt. See *Richardson v. State*, 879 S.W.2d 874, 879 (Tex.Crim.App. 1993). As factfinder, the jury may accept or reject any or all evidence. See *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim. App.1991). That the defendant presents a different factual version does not render the evidence insufficient. See *Anderson v.*

1. The offense is therefore a Class A misdemeanor. See Tex. Pen.Code Ann.

*State*, 701 S.W.2d 868, 872–73 (Tex.Crim. App.1985); *Lynch v. State*, 952 S.W.2d 594, 596 (Tex.App.-Beaumont 1997, no pet.).

### Abuse of Official Capacity

 Harrelson was charged with and convicted of abuse of official capacity. In issue three, Harrelson claims there was no abuse of official capacity as a matter of law. The law provides:

§ 39.02. **Abuse of Official Capacity**

(a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly:

. . .

(2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

Tex. Pen.Code Ann. § 39.02(a)(2) (Vernon 2003).

The indictment alleged that Harrelson, with intent to harm or defraud another, intentionally or knowingly misused government property, services, or a thing of value belonging to the government, which came into her custody or possession by virtue of her office or employment. Specifically, the indictment alleged that she used government money, more than $500 but less than $1,500,[1] to pay for:

1. the housing of Jeffrey Paul Hale at the Liberty County Jail;

2. a portion of the salary paid by Liberty County to Odell McDuffie, Jr., John Wilbert Davis III; and Brian Bortz; and/or

§ 39.02(b)(3) (Vernon 2003).

3. the travel costs and/or expenses of:

 a. McDuffie and Davis traveling to and from the Mark Stiles Unit of TDCJ–ID;

 b. Davis traveling to Dayton, Texas, with Jeffrey Paul Hale and Harrelson; and/or

 c. Bortz traveling to return Jeffrey Paul Hale to TDCJ–ID.

The evidence in the record does not establish the salaries paid to McDuffie, Davis or Bortz varied, by any degree, because of the trips to Beaumont. There is no showing their paychecks would not have been exactly the same had they been otherwise engaged. Therefore the second manner alleged cannot support the conviction.

Our review of the record reveals no evidence was admitted regarding travel costs. Accordingly, the third manner alleged cannot support the conviction.

Regarding the added expense to Liberty County of housing Hale, evidence was admitted that demonstrates Corrections Corporation of America billed Liberty County for $154,740 for inmate housing in November 2002, and $151,344 for December 2002. The invoices for those two months show the cost of housing Hale in the Liberty County Jail was $561 for November 2002 and $165 for December 2002, for a total of $726. Two checks payable to CCA were also admitted into evidence. Check numbered 4734, dated December 10, 2002, was for $432,655.44 and signed by Harold Seay and Janet Harrelson. Check numbered 5575, dated January 21, 2003, was for $410,217.25 and signed by Harold Seay and Linda Leonard.[2] Harold Seay testified the checks were written for the November and December billing by CCA and would encompass the charges for housing.

Because Harrelson did not sign the check dated January 21, 2003, the monies paid by that check were not a thing of value which ever came into her custody or possession by virtue of her office or employment. Thus that payment cannot support the conviction.

The first payment was signed by Harrelson and the cost of housing Hale, encompassed within that payment, exceeded $500. Harrelson was charged, and the jury was so instructed, with misuse of government funds. The charge defined misuse as meaning "to deal with property contrary to (a) an agreement under which the public servant holds the property or (b) a contract of employment or oath of office of a public servant or (c) a law, including provisions of the General Appropriations Act specifically relating to government property, that prescribes the manner of custody or disposition of the property or (d) a limited purpose for which the property is delivered or received." The charge's application paragraph does not identify which of these means the State was relying upon, but did instruct, "[t]he law provides that if the County Treasurer doubts the legality or propriety of [a] . . . check . . . presented to the County Treasurer for payment, the County Treasurer may not make the payment." See Tex. Loc. Gov't Code Ann. § 113.041(d) (Vernon 1999). Therefore, as we appreciate it, the issue is whether Harrelson misused county funds by signing the check.

It was not disputed that Liberty County owed the money to CCA—Hale was housed in the Liberty County jail for those days—and the record does not demonstrate a failure to comply with the procedural requirements for payment. Whether or not the county should have owed CCA for housing Hale, it did. Any underlying illegality or impropriety either is, or

---

**2.** Linda Leonard took office as the Liberty County Treasurer on December 31, 2002.

is not, an offense in and of itself. It does not transform the signing of the check, after approval by the commissioners court, into an abuse of official capacity.[3] CCA's request for payment was not illegal or improper. There is no evidence CCA did not render any of the services an/or goods for which it requested payment to Liberty County. We conclude there is no evidence to support Harrelson's conviction for abuse of official capacity and sustain issue three. Accordingly, the judgment of the trial court in Cause No. 24,514 must be reversed and an order of acquittal entered. See Tex.R.App. P. 43.2(c); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

### Forgery

██ Harrelson was also indicted for and convicted of forgery. Issue two contends no forgery was committed by Harrelson as a matter of law. The law applicable at the time of the offense is as follows:

**§ 32.21. Forgery.**

(a) For purposes of this section:

(1) "Forge" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not authorize that act;

. . .

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

. . .

(b) A person commits an offense if he forges a writing with intent to defraud or harm another.

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3643–44, amended by Act of May 10, 1997, 75th Leg., R.S., ch. 189, § 1, 1997 Tex. Gen. Laws 1045–46 (current version at Tex. Pen.Code Ann. § 32.21 (Vernon Supp. 2005)).

The State alleged two different means by which Harrelson committed the offense. First, the indictment alleged that Harrelson, with intent to harm or defraud another, made, completed, executed, or authenticated a writing, the second bench warrant, so that it purported to be the act of another, J.C. Zbranek, who did not authorize that act. Second, the indictment alleged that Harrelson, with intent to harm or defraud another, possessed a forged writing, the second bench warrant, with intent to transfer or pass it, knowing it was forged.

Judge J.C. Zbranek, formerly of the 75th District Court, testified he authorized his signature to be stamped on the first bench warrant, but not the second. Barbara Shipman, Judge Zbranek's court coordinator, testified Judge Zbranek had a signature stamp which was kept in her desk drawer. Shipman stamped a bench warrant with his signature on November 8, 2002. According to Shipman, she did not stamp another bench warrant the next week. Shipman saw another bench warrant on her desk one morning, but did not know what happened to it. Shipman did not stamp the bench warrant, it was gone from her desk approximately fifteen to twenty minutes later. Neither Shipman's desk nor her office were kept locked.

---

**3.** For example, Leonard's signing of the second check would not constitute an abuse of official capacity even though these facts were presumably known to her.

Melody Gilmore, the Liberty County District Clerk, testified she took the first bench warrant to Shipman and Shipman stamped it. She then made the necessary certified copies and sealed them. Subsequently, Harrelson brought her another bench warrant, it already bore Judge Zbranek's stamped signature. Gilmore sealed it and asked Susie Chessher to make certified copies. Gilmore answered a phone call and when she finished, found Harrelson had left with the originals and copies. Gilmore testified they do not file mark bench warrants until they come back served.

The excerpts of Harrelson's grand jury testimony introduced by the State reveal that Harrelson testified she took the application and the second bench warrant to the District Clerk's office and Susie Chessher file marked it. It was given back to her to take to Judge Zbranek's office. Harrelson testified she left it in Judge Zbranek's office on his desk, no one was there. She went back a couple of hours later and it was on the desk, ready to be picked up. Harrelson checked for a signature; it was stamped so she picked it up and took it out.

Harrelson's possession of the second bench warrant after it had been stamped with Judge Zbranek's signature is evidence from which the jury might infer she stamped the bench warrant herself. See *Palmer v. State*, 735 S.W.2d 696, 698 (Tex. App.-Fort Worth 1987, no pet.). Accordingly, we find the evidence is legally sufficient to support Harrelson's conviction for forgery. Issue two is overruled.

Tampering with a Governmental Record

 The final charges leveled against Harrelson were tampering with a governmental record. She was indicted for and convicted of two separate offenses, one for each bench warrant. Issue one asserts

Harrelson did not tamper with a government document as a matter of law. The law in effect at the time of the offense provided:

Sec. 7.10. TAMPERING WITH GOVERNMENTAL RECORD. (a) A person commits

an offense if he:

(1) knowingly makes a false entry in, or false alteration of, a governmental record;

(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;

. . .

(5) makes, presents, or uses a governmental record with knowledge of its falsity . . .

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3664 (current version at Tex. Pen.Code Ann. § 37.10 (Vernon Supp.2005)).

The two indictments alleged that Harrelson did, with intent to defraud or harm another, knowingly make a false entry in a governmental record. The records at issue in the first indictment are the application for and/or the second bench warrant. It is asserted the following entries were false:

1. on November 8, 2002, there was a case pending on the docket of the 75th Judicial District Court entitled In the Interest of John Alexander McDowell Harrelson, Cause No. 54,-144;

2. a necessity existed for the issuance of a bench warrant for Jeffrey Paul Hale in Cause No. 54,144 in the 75th Judicial District Court of Liberty County, Texas;

3. a necessity existed for Jeffrey Paul Hale to appear as a witness in Cause

No. 54,144 in the 75th Judicial District Court of Liberty County, Texas;

4. the aforementioned bench warrant was stamped and/or authorized by Judge J.C. Zbranek of the 75th Judicial District Court of Liberty County, Texas;

It is then asserted the records were made, presented, and/or used with knowledge of their falsity and with intent they be taken as genuine governmental records.

In the second indictment, the records are the application for and/or the first bench warrant. It is alleged the same entries set forth above in 1–3 are false; it is then asserted the records were made, presented, and/or used with knowledge of their falsity and with intent they be taken as genuine governmental records.

Pursuant to our discussion above, there is evidence in the record to support a finding that Harrelson stamped the second bench warrant with Judge Zbranek's signature and without authorization. This evidence is legally sufficient to support the conviction under the first indictment for tampering with a governmental record.[4] Issue one is overruled in part.

█ As regards the conviction pursuant to the second indictment, however, we find the evidence to be insufficient. Melody Gilmore testified there was no motion to modify pending on the docket of the 75th Judicial District Court. However, Mark Beausoleil testified that he thought he had filed the case and told Richard Burroughs a motion had been filed. Burroughs testified it was his understanding a motion had been filed. Burroughs stated, "it was deemed important" for Hale to testify and that Hale "had some pertinent testimony" to offer. According to Burroughs, Harrel-

son's ex-husband was expected to file a counterclaim for custody and Hale's testimony would be relevant to that issue. It was his opinion Hale was a relevant witness. Burroughs testified the application for the bench warrant was prepared by Harrelson at his direction and he believed the statements in the application to be true. Harrelson's preparation of the application does not alter its nature as an instrument filed by her attorney, albeit on her behalf. The entries in the application for the first bench warrant, true or false, were not Harrelson's, but her attorney's. Accordingly, we find the evidence does not support the conviction under the second indictment for tampering with a governmental record and sustain issue one in part. Accordingly, the judgment of the trial court in Cause No. 24,518 must be reversed and an order of acquittal entered. See Tex.R.App. P. 43.2(c); *Burks*, 437 U.S. at 11, 98 S.Ct. 2141; *Greene*, 437 U.S. at 24, 98 S.Ct. 2151.

### CHARGE OF THE COURT

█ Harrelson's fourth issue argues the trial court erred in failing to determine whether the applications for bench warrant and the bench warrants were governmental records as a matter of law. Similarly, in issue five, Harrelson claims the trial court erred in submitting to the jury the issue of whether Harrelson was guilty of tampering with a governmental record absent a finding that the documents were in fact governmental records prior to being filed.

In both cases, the charge of the court defined "governmental record" for the jury as, "anything belonging to or received by or kept by government for information, including a court record." Court record

4. It is therefore unnecessary to address Harrelson's various arguments concerning whether the application for a bench warrant constitutes a governmental record.

was defined as "a ... warrant ... issued by a court of this state." These definitions are consistent with the Penal Code. See Act of May 26, 1999, 76th Leg., R.S., ch. 659, § 1, 1999 Tex. Gen Laws 3229 (current version at Tex. Pen.Code Ann. § 37.01(2)(A) (Vernon Supp.2004)). The record does not contain any objections lodged to the court's charge. Accordingly, nothing is presented for our review. See Tex.R.App. P. 33.1(a). Issues four and five are overruled.

Issue six claims the trial court erred by submitting to the jury the question of whether the actions taken by Harrelson were made while she was acting in her official capacity. Due to our disposition of issue three, it is unnecessary to address this contention.

## ADMISSION OF EVIDENCE

■ Harrelson next argues the trial court erred in allowing into evidence her grand jury testimony in violation of the Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 20.02 (Vernon Supp.2004). The record reflects defense counsel agreed to the admission of the testimony. Accordingly, any error has not been preserved. See Tex.R.App. P. 33.1(a). Issue seven is overruled.

■ Harrelson further claims the trial court erred by admitting into evidence the highly inflammatory, irrelevant, and unfairly prejudicial information regarding Jeffrey Paul Hale, in violation of Rules 401 and 402. See Tex.R. Evid. 401, 402. The record does not reflect any objections were made to the complained-of evidence. Again, the issue has not been preserved for our review. See Tex.R.App. P. 33.1(a). Issue eight is overruled.

■ In her ninth issue, Harrelson contends the trial court erred by permitting the State to introduce the testimony of Tarrant County Assistant District Attorney Mary Butler because the testimony was extremely inflammatory and its probative value was substantially outweighed by the danger of unfair prejudice. See Tex.R. Evid. 403. The record shows no objection was made to Butler's testimony. Nothing is presented for our review. See Tex.R.App. P. 33.1(a). Issue nine is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Harrelson claims in issue ten that her Sixth Amendment right to effective assistance of counsel was violated. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Harrelson's brief enumerates thirty-five alleged deficiencies in counsel's performance. We first address those pertaining to the evidence concerning Hale's conviction (numbered 2, 3, 8, and 25–31).

Counsel on appeal complains trial counsel failed to timely prepare and file a motion in limine regarding the State's intent to use the information related to Hale's conviction. The record reflects that prior to beginning voir dire, defense counsel made an oral motion in limine requesting the State, prior to mentioning anything regarding Hale's situation (other than what he had been convicted of and his sentence) to bring it up before the court to determine relevancy. The State responded that what he wanted to mention during opening argument was what Hale had been convicted of, his sentences, and where he was convicted, which would not come up during voir dire. Defense counsel said, "That's fine." The trial court verified, "That's okay?" Defense counsel again said, "That's fine," and the State agreed, "None of the details of the offense." The trial court noted, "We have an agreement then of how you're going to

follow the Motion in Limine and no objection." Defense counsel replied, "That's fine."

Although the more prudent practice would be to file a written motion, it would not have preserved error. Defense counsel would still have been required to object to the admission of the evidence and the remarks by the State. It is clear from the above exchange that defense counsel agreed to admitting the complained-of evidence. A written motion in limine regarding the details of the offenses would not have corrected that alleged error. It is that we address—whether defense counsel erred in allowing that evidence to be admitted and in failing to object to the State's remarks related to Hale's conviction.

At the close of its questioning during voir dire, the State told the panel, "I want to talk about a class of criminals, convicted child molesters. As far as the security of those individuals, I want you to tell me whether or not it should be low, minimal security, medium security or high security insofar as their incarceration." The State asked:

If you think it should be low security, raise your card. (No response).

If you think it should be medium security, raise your card. (No response).

If you think it should be high security, raise your card. (Panel cards raise). Thank you.

In opening argument the State informed the jury that in March of 2002, Hale was facing trial in Tarrant County, Texas on five counts. The State elaborated as follows:

One inditment contained two counts of aggravated sexual assault of a child under the age of 14. That indictment, same indictment, also contained a count of indecency with a child by contact.

The other indictment pending against Jeffrey Paul Hale alleged two counts of indecency with a child by contact. Two indictments, five total counts, serious charges.

... Jeffrey Paul Hale was convicted on all five counts by a Tarrant County jury. And in early April of 2002, he was sentenced by Judge Joe Drago in Tarrant County, Texas, Criminal District Court No. 4, if I'm not mistaken, and he was sentenced on the two aggravated sexual assault of a child under the age of 14 years. Those two counts, he was sentenced to 40 years in prison for each of those counts. It'll be three indecency of a child by contact charges, he was sentenced to 10 years in prison on each of those. Three 10 year sentences, two 40 year sentences, but they were all tried in the same trial, so the law necessitated that they run together or concurrently. So, in essence, he was serving a sentence of one 40 year sentence because they all run together, they run at the same time.

Further on, the State said, "... on November 13th, 2002, when Odell McDuffie, ... went to the Mark Stiles Unit to pick up a convicted child molester, it wasn't just Odell in the car." And again, "J.D. went and the defendant went along again in a county patrol car ... to pick up her son, a convicted child molester." The State's first witness was Mary Butler, an Assistant District Attorney for Tarrant County, Texas. During her testimony, State's Exhibit No. 1, a pen packet, was admitted into evidence. It contains the judgment, sentence, and documents from the Texas penitentiary system, including an identifying photograph, regarding a case Butler prosecuted against Hale in March and April of 2002. The packet was exhibited to the jury, page by page. Butler identified the second page as a photograph of Hale. The next page was the first page of the

judgment on a guilty verdict, showing Hale was convicted of aggravated sexual assault of a child under 14 and indecency with a child by contact. It further reflects Hale was sentenced to forty years on the first count, and ten years on the second. The following page shows the judgment was signed by Judge Drago, III, on April 18, 2002. The next page was a judgment on a jury verdict of guilty on two counts of indecency with a child for which Hale received a ten-year sentence. Following it was the last page, again with Judge Drago's signature. The State went back to the photograph and asked Butler about the ID Number. Butler testified that is the tracking number assigned to Hale to identify him in the system. It is a unique number that follows him to any unit to which he may be sent. The State then introduced another photograph into evidence as State's Exhibit No. 2. Counsel objected on relevancy grounds. The State responded, "this shows an individual before they get that haircut, before they get the haircut they get in the prison system ..." The trial court admitted the photograph, stating, "I don't see anything prejudicial about it." Butler testified the photograph shows Hale as he appeared at his initial "book-in." The photograph was exhibited to the jury. The State asked Butler if she knew Sharon Dulany. Butler identified Dulany as the parent of a victim in Hale's case.

Defense counsel cross-examined Butler asking, "I see it says on the first judgment, counts one and two with a single sentence. Was that a single verdict on counts one and two as one conviction or are those separate counts where each— was he found guilty of two counts there or just two pleadings of committing the same offense?" Butler answered there were two separate counts. Defense counsel asked if the second was the same, and Butler said, "correct."

The State's second witness was Sharon Dulany. Dulany testified she met Hale once at her ex-husband's house, and that was the only time, "until the trial." The trial was in Fort Worth, Texas, and Butler was involved. Dulany was asked by the State, "would you tell the Court and jury what [your child's] connection with the trial was?" Dulany answered, "He was a victim at the trial." In November 2002, Dulany received notice Hale was being transferred to Liberty County on a bench warrant. Dulany then made phone calls to Victim's Crime Assistance, the Sheriff's Department, and the District Clerk's office.

In a bench conference prior to Butler being called to testify, the State informed the trial court he wished to call Dulany, the mother of one of the victims. Defense counsel stated, "I don't know if it's relevant. I think if she said she received the notice, I think that resolves any issues there are and he doesn't need to go into the allegations beyond what he's told you already." The trial court responded, "Well, surely you don't want to go into the nature of the allegations." Defense counsel offered to withdraw the objection if Dulany referred to "her child," as opposed to "her son." The State agreed. However, defense counsel made no objection when either the State or Dulany referred to the child as male.

On direct examination, State's witness Mark Beausoleil testified, "I knew what was on Ms. Harrelson's mind and coming out of her mouth, because what she was really concerned with at the time after the election was her son's pending criminal case, her son Jeff Hale's pending criminal case up in Tarrant County, and that criminal case was sexual charges that he was charged with."

On redirect examination, the State questioned John Davis regarding prior practice of transporting prisoners. In reference to an inmate taken to the hospital to visit a dying parent, the State asked, "And was he a convicted child molester?" Davis did not recall and the State then asked, "Do you know if he was doing 40 years in prison?" The State further questioned Davis as to whether it was policy to have more than one person for security when taking a convict out of prison. Davis said it depended on the circumstances. The State then enquired, "So, if it's a convicted murderer or a convicted sex offender, is it policy to have added security." Davis said each case could be different. The State continued, "Well, what about somebody doing 40 years in prison for five counts of child molestation? Would you think that person would need added security?" Before Davis completed his answer, the State pressed on, "What about the policy? What does it say for a child molester doing 40 years for five counts of child molestation?"

At the beginning of his closing argument, the State made the following remarks:

I think the first witness that testified in this trial was a lot of consequence. It was Mary Butler, Assistant DA from Tarrant County, Texas. She tried Jeffrey Paul Hale on two counts of aggravated sexual assault of a child under age 14, three counts of indecency with a child, and he was convicted by a jury. Now, that's very important in this case because that's what Jeffrey Paul Hale received. That was the time he was doing when he did this gallivanting around Liberty County.

That is Jeffrey Paul Hale. That is Jeffrey Paul Hale. And that is Jeffrey Paul Hale. All 12 of you, when I selected a jury in this case, I asked you, I asked everybody out here, how do you believe

convicted child molesters should be treated? Low security, medium security, and high security. And I know you 12 raised your hand because everybody in the room raised their hand. Don't forget Jeffrey Paul Hale. Don't forget that person, that child molester is who we're talking about that was treated as if he had written a 50 cent hot check. That's important in this case.

Next, Sharon Dulany testified, mother of the victim of Hale's molestation. She received notice from TDCJ and she began to notify people and notified my office and started the ball rolling. Ask yourself. That's a witness of great consequence because what if Sharon Dulany would have never contacted us? I submit to you that Jeffrey Paul Hale would still be sitting in Liberty County Jail at 33 bucks a day on our tab.

Further on, the State discussed the testimony of Judge Zbranek. The State recounted that after the facts were known, Harrelson asked, "Can he stay? ... And he said, no. He said, what you ought to say when you render a verdict in this case, that Jeffrey Paul Hale earned his 40 years in prison and that's where he needs to serve his time." Defense counsel did object, but the trial court overruled it.

The record does not reveal defense counsel's reasons for agreeing to admit the evidence, but it clearly was intentional. Given the presumption of effectiveness and the great deference we give to decisions made by defense counsel, we find the present record does not affirmatively demonstrate counsel's performance was deficient. See *Costilla v. State* 84 S.W.3d 361, 365 (Tex.App.-Beaumont 2002), aff'd, 146 S.W.3d 213 (Tex.Crim.App.2004).

 We now turn to the other deficiencies alleged by Harrelson and address each as numbered in her brief.

1. Failing to request a change of venue because of substantial pre-trial publicity that unfairly prejudiced defendant and denied her a fair trial;

The record reflects defense counsel questioned the jury panel regarding pre-trial publicity. No one on the panel, except Mr. Kalbitz, indicated they had already formed an opinion. The record reflects Kalbitz did not serve on the jury. The record does not reflect whether the publicity was pervasie, prejudicial, or inflammatory. See *Bell v. State,* 938 S.W.2d 35, 46 (Tex.Crim.App.1996). Harrelson has not demonstrated an actual, identifiable prejudice on the part of members of her jury which was attributable to the publicity. See *Moore v. State,* 935 S.W.2d 124, 129 (Tex.Crim. App.1996).

4. Failing to effectively disqualify or rehabilitate biased jurors or request to strike any juror for cause, even after at least three jurors stated they could not be fair and impartial during voir dire;

Harrelson's brief does not identify the three jurors but the references to the record indicate they are Kalbitz, Alberts and Rayon, none of whom served on the jury.

5. Failing to object to the manner in which the State's voir dire unfairly prejudiced the jury against defendant;

Harrelson's brief refers this court to thirteen pages of the reporter's record of voir dire wherein the State discussed the elements of the various offenses as alleged in the indictments and the burden of proof. Harrelson makes no argument and cites no authority that such a discussion is objectionable. See Tex.R.App. P. 38.1(h).

6. Failing to timely object to misrepresentations of law and fact that inflamed and unfairly prejudiced the jury against defendant;

Harrelson's brief does not identify any misrepresentations. See Tex.R.App. P. 38.1(h).

7. Making statements against defendant's interest to the jury;

Harrelson's brief refers to eleven separate pages in the reporter's record but does not identify any statements or explain how they were against Harrelson's interest. See Tex.R.App. P. 38.1(h).

9. Admitting that he confused the jury and himself during voir dire;

In reference to the bench warrants, defense counsel said, "I, myself, get confused a bit as between number one and number two." Harrelson's brief makes no argument as to how this statement prejudiced the defense.

10. Admitting to the jury that he had never seen a jury charge like the one in this case and had never had a case this complex;

Taken in context, defense counsel's statement could have been trial strategy to identify with the jury and blame the State for the complexity of the allegations. We cannot say such a strategy was unreasonable.

11. Discussing the probability of defendant testifying;

During voir dire, defense counsel informed the jury Harrelson might not testify in the context of explaining that the State bore the burden of proof and Harrelson did not have to testify to prove her innocence. Harrelson's brief makes no argument as to why this was unreasonable trial strategy.

12. Admitting to the jury that he did not know what he was up against from the prosecution;

This statement followed that complained of above, when defense counsel said he did

not know whether Harrelson would testify. Counsel then stated, "But, you know, since I haven't heard the State's case, I don't really know exactly what I'm up against. I have a pretty good idea.... I don't know how much credible, believable evidence they're actually going to produce before this jury." Harrelson's brief does not explain how this statement prejudiced the defense.

■ 13. Failing to object to the appearance of judicial misconduct, including a one-hour ex parte communication between the trial judge and a material witness in the case;

The record reflects that after a lunch break on the third day of trial, the trial judge asked the lawyers to approach the bench and informed them that he was having lunch with his wife when Judge Don Taylor joined them. According to the trial judge, "We visited, but not about this case." Judge Taylor testified the next day. We have no record on appeal explaining the reasons for defense counsel's decision not to object or move for a mistrial. Such a record is usually developed in a motion for new trial hearing or on writ of habeas corpus. See *Redmond v. State*, 30 S.W.3d 692, 698–99 (Tex.App.-Beaumont 2000, pet. ref'd). Absent evidence in the record of counsel's thought processes and trial strategy, the presumption of effectiveness cannot ordinarily be overcome. See *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

■ 14. Failing to timely object to prosecutorial misconduct, including the prosecutor's reference to the defendant's election to have the judge sentence her; the prosecutor's reading of the indictments during voir dire; and the prosecutor's introduction of the defendant's grand jury testimony;

■ Regarding the first two complaints, Harrelson's brief fails to cite any authority for her contention the State's remarks were objectionable. As to the third, again, the record is devoid of any evidence as to counsel's trial strategy in permitting the introduction of the grand jury testimony. It was deliberate and absent any evidence regarding strategy, we find the presumption of effectiveness has not been overcome.

15. Failing to timely address prosecutorial vindictiveness in prosecuting the lawful acts of defendant as evidenced from the record as a whole;

Harrelson's brief fails to refer to the record or cite any authority on this point. See Tex.R.App. P. 38.1(h).

■ 16. Failing to properly prepare for defendant's sentencing hearing wherein counsel represented to the court twenty minutes before the hearing that he had not seen the PSI report on defendant;

There is no record reference for the PSI in Harrelson's brief. Harrelson does not demonstrate, or even argue, that the result of the punishment hearing would have been different had counsel reviewed the report.

■ 17. Failing to timely object to the prosecutor's misrepresentation to the jury that the conduct of defendant was committed in her official capacity as Liberty County Treasurer, that she misused county funds, and that defendant received undue benefits;

Harrelson's brief refers this court to the State's closing argument. The State is entitled to argue to the jury that the facts adduced during trial prove the elements of the alleged offense.

18. Failing to object to prosecutor's efforts to predispose the jury towards conviction during voir dire;

Harrelson's brief refers this court to thirteen pages of the reporter's record of voir dire wherein the State discussed the elements of the various offenses as alleged in the indictments and the burden of proof. Harrelson makes no argument and cites no authority that such a discussion predisposed the jury to convict. See Tex.R.App. P. 38.1(h).

19. Failing to object to the prosecutor's misrepresentations to the jury that the mere act of filing a document, which may contain a false or erroneous statement, is illegal when that document is not signed by the person filing it, but by a duly licensed and practicing attorney;

20. Failing to object to the prosecutor's misrepresentation that at the time the applications were prepared by defendant, they were governmental records;

21. Failing to object to the prosecutor's misrepresentation to the jury that the defendant made a false entry into a governmental document, when according to the provisions of section 37.01 of the Texas Penal Code, the documents did not meet the definition of a governmental record at the time the entries were made;

As noted in number seventeen above, the State is entitled to argue to the jury that the facts adduced during trial prove the elements of the alleged offense.

22. Admitting to the jury that he is flustered and unsure about how the burden of proof shifts during the trial;

23. Seeking assistance from the prosecutor during voir dire regarding the burden of proof;

These complaints concern defense counsel's remarks during voir dire on the defense of mistake of fact. Immediately following these statements, defense counsel said, "Okay. I was right." He then continued to explain the defense. Harrelson does not explain how these statements prejudiced her defense.

24. Failing to object to evidence that was unfairly prejudicial, including State's Exhibit 33 that contained the large checks paid to CCA of which it is alleged that a small percentage of the funds were paid to Liberty County Sheriff's deputies for transporting Hale;

Harrelson's brief fails to include any argument or authority for excluding that evidence.

32. Waiving defendant's attorney-client privilege as to Beausoleil;

Harrelson's brief does not identify any prejudice or harm resulting from Beausoleil's testimony. As noted above, Beausoleil testified as to the apparent necessity of having Hale appear as a witness. Therefore we cannot say defense counsel's decision constituted unreasonable trial strategy.

33. Failing to object to the testimony of Ranger Huff and his admission of defendant's grand jury testimony and conduct by the State;

34. Admitting into evidence defendant's grand jury testimony and referring to her testimony in his arguments when she did not testify.

As noted above, the record is devoid of any evidence as to counsel's trial strategy in permitting the introduction of the grand jury testimony.

35. Failing to timely object to the admission of checks paid to Liberty County Sheriff's deputies.

Harrelson's brief does not identify any basis for such an objection.

In this case, as in many before it, the record on direct appeal is insufficient to show that trial counsel's representation was so deficient as to overcome the presumption that counsel's conduct was reasonable and professional. See *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). See also *Johnson v. State*, 68 S.W.3d 644, 655 (Tex.Crim.App.2002). Accordingly, issue ten is overruled.

## CONDUCT OF PROSECUTOR

■ Harrelson's eleventh and twelfth issues assert the State engaged in prosecutorial misconduct during the trial and demonstrated prosecutorial vindictiveness in the preparation and presentation of the trial. "To preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. See Tex.R.App. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996)." *Morrison v. State*, 132 S.W.3d 37, 49 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). The record does not demonstrate Harrelson objected or moved for a mistrial when the conduct in question occurred. Accordingly, any error has not been preserved. Issues eleven and twelve are overruled.

## CONDUCT OF TRIAL JUDGE

■ Issue thirteen alleges the trial court abused his discretion and engaged in acts constituting judicial misconduct during the trial. Nothing in the record shows Harrleson objected, requested the judge instruct the jury, or moved for a mistrial when the conduct in question took place. Thus nothing was preserved for review.

See *Gerhardt v. State*, 935 S.W.2d 192, 196 (Tex.App.-Beaumont 1996, no pet.) (citing *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim.App.1995)). Issue thirteen is overruled.

## SELECTIVE PROSECUTION

■ Issue fourteen charges the State engaged in selective prosecution by bringing these charges against Harrelson. "To support a defense of selective or discriminatory prosecution, a defendant must make a prima facie showing that (1) although others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his constitutional rights." *Hall v. State*, 137 S.W.3d 847, 855 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (citing *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim.App. [Panel Op.] 1980)). The record does not establish Harrelson made any effort at trial to establish the alleged discriminatory prosecution. Id. Nothing is presented for review. See Tex.R.App. P. 33.1. Issue fourteen is overruled.

## MOTION FOR NEW TRIAL

■ Harrelson's final issue claims the trial court erred in overruling her motion for new trial.[5] Eight specific complaints are raised. The first concerns the denial of Harrelson's motion to substitute counsel. The motion was filed October 22, the same day the sentencing hearing was scheduled and trial court denied the motion. Harrelson's brief makes no argument as to any harm or prejudice resulting

---

**5.** A hearing on the motion was scheduled but before it was held, the trial court overruled the motion. We are not presented with the issue of whether the trial court erred in failing to conduct the hearing.

from the trial court's decision. The same is true for the complaint that defense counsel had not read the pre-sentence investigation report. Accordingly, neither establishes the trial court abused its discretion in overruling the motion for new trial. See *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). Regarding the complaints numbered 2–8, the record does not reflect those were preserved for our review. See Tex.R.App. P. 33.1. Issue fifteen is overruled.

CONCLUSION

Having found the evidence legally insufficient to sustain the conviction for abuse of official capacity and one charge of tampering with a governmental record, the trial court's judgments in Cause Nos. 24,-514 and 24,518 are reversed and an order of acquittal entered. The convictions for forgery and one charge of tampering with a governmental record reflected in the trial court's judgments in Cause Nos. 24,515 and 24,516 are affirmed.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.