**Opinion issued March 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00266-CR

————————————

## MANOOCHER THOMAS ROWSHAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court at Law**
**Waller County, Texas**
**Trial Court Case No. CC09-1007**

---

# O P I N I O N

Manoocher Thomas Rowshan was convicted by a jury of forgery, a class A misdemeanor. *See* TEX. PEN. CODE ANN. § 32.21 (West Supp. 2009). The trial court sentenced Rowshan to six months' imprisonment and a $2,000 fine. On

appeal, Rowshan raises two points of error: (1) there was legally insufficient evidence to support his conviction for forgery; and (2) the trial court erred in admitting evidence of extraneous offenses. We affirm.

**Background**

In September 2009, Rowshan filed for divorce from Linda Ebert in Waller County. The case was assigned to the Honorable June Jackson in the County Court at Law. On September 8, 2009, Judge Jackson signed a four page document entitled "Notice of Hearing for Temporary Orders," which set a hearing for October 29, 2009, and indicated on the front page that the purpose of the hearing was to determine whether the temporary injunction prayed for should be granted to enjoin Ebert from engaging in the conduct enumerated on the remaining pages.

A hearing was held on October 29, 2009, and during the hearing, Judge Jackson granted a mutual temporary restraining order, which required, among other things, both Rowshan and Ebert to refrain from communicating with each other while the divorce was pending. Also at this hearing, Rowshan requested a protective order against Ebert, Janice Bowen, and Irving Leroy Marshall, persons who allegedly made threats against him and posted defamatory remarks about him on a blog. Judge Jackson informed Rowshan that she was unable to issue a protective order because an application for one had not been filed. She informed

Rowshan that he needed to file an application for a protective order and referred him to the District Attorney's Office for help.

On November 6, 2009, Rowshan filed with the district clerk a two-page document entitled "Petitioner's Supplement to Temporary Protective Order and Restraining Order." In this document, Rowshan requested that the trial court add Bowen and Marshall to the Temporary Protective and Restraining Order that was granted on October 29, 2009. Rowshan attached to this document an Exhibit A, which resembled Judge Jackson's September 8th notice of hearing, but included some significant additions and changes. Whereas Judge Jackson's notice of hearing was entitled "Notice of Hearing for Temporary Orders," Rowshan's Exhibit A was entitled "Notice of Hearing and *Order on Petitioner's Motion for Protective Order*." (Emphasis added). Exhibit A also contained language that had not been included in Judge Jackson's September 8th notice of hearing, and which purported to be an order of Judge Jackson binding individuals who were not parties to the case. The two paragraphs, which Rowshan embedded in the second page of Judge Jackson's notice of hearing, stated:

> In case of bodily injury or death or any harm in any fashion AND or any damage to THOMAS ROWSHAN (petitioner's) property or pets, all the above persons are responsible and liable in petitioner's cause of action.
>
> Further, it is ordered that THOMAS ROWSHAN "petitioner" is allowed to enter to the property located at 26701 Pine Tree Court, Waller, TX 77484 and remove all the material and tools that illegally

3

was in [possession] of LINDA C. EBERT "Respondent" and if there are any tools missing, Respondent is liable to replace them.

The insertion of this text made Rowshan's Exhibit A one page longer than Judge Jackson's September 8th notice of hearing. However, the last page of Exhibit A was identical to the last page of Judge Jackson's notice of hearing: both bore several paragraphs of text, Judge Jackson's signature, and reflected that she signed them on September 8, 2009 at 1:30 p.m.

Liz Pirkle, Deputy District Clerk for Waller County, became suspicious of Rowshan's Exhibit A because it was titled "Petitioner's Supplement to Temporary Protective Order and Restraining Order," but she knew neither a protective order nor a restraining order was ever filed with the court. She discovered that, while the appearance of Rowshan's Exhibit A was almost identical to the September 8th notice of hearing that Judge Jackson signed, additional paragraphs and names had been added into the document. Pirkle alerted Judge Jackson, who became concerned that the parties on the attached certificate of service, including the Waller County Sheriff's Department and the Waller County District Attorney's Office, would think that Exhibit A was a legitimate order. She wrote a letter to those on the certificate of service informing them that "this was not an order of the court and that the court did not have the authority to and no intentions to issue orders affecting non-parties to a lawsuit." Judge Jackson also forwarded the letter and a copy of the document to the District Attorney's Office for investigation.

4

After a hearing, Judge Jackson signed an order setting aside the fraudulent document.

Rowshan was charged with misdemeanor forgery. Following a jury trial, Rowshan was convicted of forgery and sentenced by the trial court. Rowshan now appeals.

## Sufficiency of the Evidence

In his first point of error, Rowshan argues that the evidence is legally insufficient to support a finding beyond a reasonable doubt that he filed his Exhibit A with the required intent to harm or defraud. He contends that the text of Exhibit A, the document to which it was attached, the manner in which he presented them to the court, and the absence of any evidence that he tried to use the document for his benefit precludes a finding beyond a reasonable doubt that he acted with an intent to harm or defraud.

### A. Standard of Review

"[E]vidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). Evidence is insufficient under this standard in four

5

circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479. The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479.

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct.

6

at 2793).  "An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence."  *Gonzalez*, 337 S.W.3d at 479.  A court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt.  *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13).

**B.    Analysis**

Under section 32.21 of the Texas Penal Code, "[a] person commits an offense if he forges a writing with intent to defraud or harm another."  TEX. PENAL CODE ANN. § 32.21(b).  To "forge" means "to alter, make, complete, execute, or authenticate any writing so that it purports . . . to be the act of another who did not authorize that act."  *Id.* § 32.21(a)(1)(A)(i).  The intent to defraud or harm another may be established by circumstantial evidence, including an accused's acts, words, or conduct.  *See Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985); *Mason v. State*, 820 S.W.2d 896, 897 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982)).

Rowshan does not dispute that he created Exhibit A and that it contained the unauthorized signature of Judge Jackson.  He nevertheless maintains that there was insufficient evidence that he acted with the intent to defraud or harm another when he created Exhibit A.  We conclude otherwise.

The evidence shows that, at the October 29th hearing, Judge Jackson instructed Rowshan that she could not grant a protective order when one had not been requested. She testified that she informed Rowshan that he needed to file an application for a protective order and referred him to the District Attorney's Office. Rowshan testified that he understood this ruling to mean that he had to resubmit his request for a protective order. Rowshan testified that by filing Exhibit A, he was merely requesting a hearing in order to obtain an order against these additional parties, recover his property, and protect himself. He testified that when he attached the signature page from the earlier order to this document, he was "not in any normal state of mind to know what [he] was doing . . . [he] was focused on requesting [a] hearing." However, the language of the document itself and Rowshan's actions do not support this contention. First, the title of the document reflects that is notice of a hearing and an *order* on his motion for a protective order. And it includes language binding Ebert as well as other individuals who were not parties to the case. These provisions purport to impose future liability on non-parties and to entitle Rowshan to enter onto private property to remove personal property. And Rowshan arranged the text in Exhibit A so as to mimic Judge Jackson's notice of hearing and make these provisions appear to have the force of an order of a member of the State's judiciary. After he created Exhibit A, Rowshan sent this document not only to the persons he was attempting to bind, but

8

also to the Waller County District Attorney's Office and the Waller County Sheriff's Department, apparently to have them believe it was a valid enforceable order.

Based on this evidence, we conclude that a rational jury could have found, beyond a reasonable doubt, that Rowshan made or altered Exhibit A, which contained the unauthorized signature of Judge Jackson, with the intent to defraud or harm another. Accordingly, we hold that the evidence is legally sufficient to support Rowshan's conviction for forgery. *See Harrelson v. State*, 153 S.W.3d 75, 82–83 (Tex. App.—Beaumont 2004, pet. ref'd) (holding evidence sufficient to sustain forgery conviction where judge authorized signature on first bench warrant and court clerk testified defendant filed unauthorized second bench warrant, which was stamped with judge's signature).

We overrule Rowshan's first point of error.

### Extraneous Offenses

In his second point of error, Rowshan argues that the trial court's erroneous admission of evidence of extraneous offenses requires reversal. Rowshan contends that the State was permitted to question him about extraneous offenses that were not relevant to the instant case and were introduced merely to show bad character.

## A.    Applicable Law

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character or that a person acted in conformity with that character. TEX. R. EVID. 404(b). But evidence of other bad acts may be admissible under Rule 404(b) for other purposes, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Specific acts of misconduct are also admissible to impeach a party or witness if the misconduct resulted in a conviction, was a felony or involved a crime of moral turpitude, regardless of punishment, and the trial court determines that the probative value of the evidence outweighs its prejudicial effect. *See Delk v. State*, 855 S.W2d 700, 704 (Tex. Crim. App. 1993); *see also* TEX. R. EVID. 609(a).

A third exception to the general rule against admission of other bad acts applies when a witness leaves a false impression as to the extent of his prior (1) arrests, (2) convictions, (3) charges, or (4) trouble with the police. *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988). When a defendant leaves such a false impression during his direct testimony, he is commonly said to have "opened the door" to an inquiry by the State as to the validity of his testimony. *Id.* A defendant who "opens the door" to otherwise inadmissible evidence risks having that evidence admitted and used against him, provided the party offering the

10

evidence does not "stray beyond the scope of the invitation." *Feldman v. State*, 71 S.W.3d 738, 755–56 (Tex. Crim. App. 2002) (citing *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997)). "In order, however, to open the door to the use of prior crimes for the purpose of impeachment, the witness must do more than imply that he abides by the law, and must in some way convey the impression that he has never committed a crime." *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.).

## B.    Analysis

The State contends that Rowshan opened the door to evidence of prior convictions and charges during direct examination by giving a false impression about his arrest, charge, and conviction history. Therefore, the State maintains, it was permitted to cross-examine Rowshan about a terroristic threatening charge, a 2002 judgment reflecting the revocation of deferred adjudication from his 1995 theft conviction, and a prostitution conviction. During Rowshan's direct examination, Rowshan's counsel questioned him about the threats and accusations Marshall and Bowen made against him as follows:

> DEFENSE COUNSEL:    Did they accuse you of any criminal acts?
>
> ROWSHAN:    They accuse me of theft that I was convicted 18 years ago for nonsufficient funds for $1,049 that my customer didn't pay me and the check was bounced. They told me— they posted all over Internet that I am

11

|  |  |
|---|---|
|  | standing on a corner of the Montrose and selling my body. |
| DEFENSE COUNSEL: | Okay.  Well, I'm going to stop you there. |
| ROWSHAN: | And many others. |
| DEFENSE COUNSEL: | Except for the charge of theft and we understand that you were convicted 18 years ago— |
| ROWSHAN: | Yes |
| DEFENSE COUNSEL: | —for felony hot check. |
| ROWSHAN: | Yes. |
| DEFENSE COUNSEL: | Except for that were any of the allegations true? |
| ROWSHAN: | Any allegation that they posted there it was not true. |
| . . . . |  |
| DEFENSE COUNSEL: | Now, you said one of the things you talked about was being accused of being a terrorist. Have you been convicted or even investigated as a terrorist? |
| ROWSHAN: | Not at all. |
| DEFENSE COUNSEL: | The other things are all—you've never been convicted of selling your body on Montrose? |
| ROWSHAN: | Never. |
| DEFENSE COUNSEL: | Or of any of the things other than the theft charge that they've accused you? |

12

ROWSHAN:               No

The State presented evidence that contradicted Rowshan's testimony on direct. Specifically, the State presented an information charging Rowshan with terroristic threatening, a judgment of conviction for prostitution from 2006, and a judgment revoking Rowshan's deferred adjudication for the 1995 theft conviction and sentencing Rowshan to two years' imprisonment. Although Rowshan argues that he never stated he was not convicted of anything other than theft in 1995, it is clear from the above exchange that he was specifically asked about convictions or investigations related to being a terrorist, prostitution, and theft. By testifying on direct that none of the allegations against him were true and that he had never been convicted or investigated for prostitution, theft (other than the 1995 conviction), or being a terrorist, Rowshan created a false impression about his charge and conviction history. Therefore, the State was entitled to impeach Rowshan with the evidence about which he complains. *See Grant v. State*, 247 S.W.3d 360, 368 (Tex. App.—Austin 2008, pet. ref'd) (holding that defendant's statement that he had "never done that to anybody" suggested that he had never been in a fight before and had never caused serious injury to anyone and was sufficient to invite impeachment with prior assault evidence introduced by State); *Metts v. State*, 22 S.W.3d 544, 549 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding that defendant's statement that he had never been involved in anything "remotely like

13

this" before opened door to admission of evidence of his prior arrest for indecent exposure).   We conclude that the trial court did not err by admitting this evidence.

We overrule Rowshan's second point of error.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).

14